**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BRIDGET JOHNSON, ) | |
| ) | CASE NO.   1:08-CV-634 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Bridget Johnson ("Johnson") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

## I. Procedural History

On November 5, 2004, Johnson filed an application for POD, DIB and SSI alleging a disability onset date of May 20, 2004 and claiming that she was disabled due to depression. Her application was denied both initially and upon reconsideration. Johnson timely requested an administrative hearing.

On September 20, 2007, Administrative Law Judge Mark M. Cassimi ("ALJ") held a hearing during which Johnson, represented by counsel, testified. Gene Burkhammer also testified as the Vocational Expert ("VE"). On October 24, 2007, the ALJ found Johnson was able to perform her past relevant work and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Johnson filed an appeal to this Court.

On appeal, Johnson claims the ALJ erred because: (1) the ALJ failed to grant substantial weight to the opinion of treating provider; and (2) substantial evidence proves that her impairment met or equaled Listing 12.04. (Doc. No. 15.)

## II. Evidence

*Personal and Vocational Evidence*

Born on March 27, 1970 and age thirty-seven (37) at the time of her administrative hearing, Johnson is a "younger" person. *See* 20 C.F.R. § 404.1563 and 416.963 (c). Johnson has a high school diploma and an Associate's Degree in Art. (Tr. 444-45.) She has past relevant work as security guard, cashier and food server. (Tr. 446-47.)

*Medical Evidence*

Johnson began receiving counseling from Abel Oriri at the Murtis H. Taylor Multi-

Service Center in 1995 (Tr. 281-90.) According to treatment notes, Johnson had experienced depression since high school. (Tr. 290.) Oriri saw Johnson on a weekly basis throughout 1995, 1996 and 1997. (Tr. 281-86.)[1]

On October 28, 2004, Johnson went to the emergency room at St. Vincent Charity Hospital reporting depression and suicidal ideation. (Tr. 362-64.) Her problems were documented as: "depressed mood, financial stresses, wants to apply for disability." (Tr. 365.) Johnson was described as well-dressed, cooperative, and as making good eye contact. (Tr. 364.) Her speech was described as normal, her affect as full, her mood as depressed, and her thought as logical. (Tr. 366.) Johnson denied having any suicidal or homicidal plans. *Id*. She was diagnosed with an adjustment disorder and depressed mood. *Id*. The attending physician assigned her a Global Assessment of Functioning (GAF) score of 51-60.[2] *Id*. Johnson was discharged to self-care and told to follow-up with community mental health services. (Tr. 361.) No new medications were prescribed. *Id*.

In a letter dated December 13, 2004, Oriri reported that Johnson had been diagnosed with clinical depression four years earlier. (Tr. 379.) He stated that Johnson lived alone with family assistance for most of her adult life. *Id*. In his letter, he stated that he last saw Johnson on October 18, 2004, at which time he referred her to St. Vincent Charity Hospital for further

---

[1] Though Johnson alleges an onset date of May 20, 2004, the record reflects only four instances of counseling from Oriri since that date. (Tr. 374, 410-413.)

[2] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

3

evaluation. *Id*. He also reported that Johnson had continued difficulties with both affective and cognitive processes and had exhibited suicidal ideation. She had a depressed mood and flat affect and needed medical maintenance to bring her to a functioning level. He noted that Johnson was not very compliant with her treatment, which had contributed to her lack of progress. *Id*.

On December 22, 2004, Oriri completed a questionnaire for the Bureau of Disability Determination. (Tr. 374.) Oriri described Johnson as having pressured speech, depressed mood, flat affect, flight of ideas, suicidal ideation, difficulty with both short and long term memory, and poor insight and judgment. *Id*. (Tr. 374). Oriri rated Johnson's abilities as "poor" in the following areas: ability to remember, understand, and follow directions; ability to maintain attention; ability to sustain concentration, persist at tasks, and complete them in a timely fashion; and, adaptation. (Tr. 375.) He further noted that Johnson was paranoid and had no friends. *Id*. He diagnosed her with major depression (recurrent) and dependent personality. *Id*. (Tr. 375). He
opined that Johnson had been fired or disciplined several times and was unable to maintain employment due to severe mental health issues. (Tr. 377.)

On March 29, 2005, state agency psychologist Patricia Semmelman reviewed Johnson's records and concluded that Johnson had a medically determinable impairment – depression, not otherwise specified. (Tr. 382-83.) Semmelman found that Johnson had mild restriction of daily activities, but had moderate difficulties in maintaining social functioning and also in maintaining concentration, persistence, and pace. (Tr. 384.) She found insufficient evidence of episodes of decompensation. *Id*. Semmelman further found that Johnson was not significantly limited in her

4

ability to understand and remember short and simple instructions, but was moderately limited in her ability to understand and remember detailed instructions. (Tr. 386.) She also found moderate limitations in Johnson's ability to maintain attention and concentration for extended periods and in her ability to work in coordination with or proximity to others without being distracted by them. *Id.* She was also moderately limited in her ability to deal with the public or co-workers and in responding appropriately to changes in the work setting. (Tr. 387.) Semmelman concluded that Johnson "would be able to perform simple routine tasks in a low stress environment involving limited interaction with others." (Tr. 388.) On June 30, 2005, state agency psychologist Roseann Umara, Ph.D., reviewed Johnson's records and affirmed Semmelman's findings. (Tr. 382.)

In three separate medical source statements dated November 19, 2005, January 10, 2007, and June 12, 2007, Oriri opined that Johnson had poor or no ability to make workplace adjustments in a myriad of mental categories. (Tr. 401-06.)

In May of 2007, Oriri saw Johnson twice. He continued to diagnose her with major depression without psychotic features and avoidant personality disorder. He assigned her a GAF score of 55. (Tr. 411.)

*Hearing Testimony*

At the hearing, Johnson testified that she was unable to work full-time due to depression and stress. (Tr. 422.) During any given day, she would exercise, watch television, listen to the radio, go for walks, wash the laundry and dishes, and shop for groceries. (Tr. 440.) She socialized with her mother and friends "a little bit," but said she had few friends. (Tr. 440-41.) She used public transportation. (Tr. 443.) She took medications to regulate her thyroid and

5

ovaries, but none for her mental health. (Tr. 441-42.)

The ALJ asked the VE to consider the following hypothetical person: an individual with Johnson's vocational characteristics, no exertional limitations, and a limitation to simple, routine work involving only superficial interaction with coworkers and the public and involving no negotiation or confrontation. (Tr. 447-48.) The VE testified that such an individual would be able to perform Johnson's past relevant work as a food server and cashier. (Tr. 448.) The VE also identified other jobs that an individual with the given limitations could perform, including housekeeping cleaner, hand packager, and production assembler. (Tr. 449.) In response to a question asked by Johnson's counsel, the VE testified that an individual who was off-task twenty percent of the time could not engage in competitive employment. (Tr. 450.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

---

[3] The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Johnson was insured on her alleged disability onset date, May 20, 2004 and remained insured through the date of the ALJ's decision. (Tr. 19.) Therefore, in order to be entitled to POD and DIB, Johnson must establish a continuous twelve month period of disability commencing between May 20, 2004 and October 24, 2007. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Johnson established medically determinable, severe impairments due to depression and avoidant personality; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 19.) Johnson is able to perform her past work activities and has a Residual Functional Capacity ("RFC") for the full range of all exertional work levels with certain non-exertional limitations. (Tr. 21.) The ALJ then used the VE's testimony to determine that Johnson is not disabled.

---

in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

**V. Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

**VI. Analysis**

**A.      Treating Physician**

Johnson claims that the ALJ erred by failing to grant substantial weight to the opinion of treating provider Abel Oriri. Johnson argues that the opinion of a treating source is entitled to greater weight than the physicians hired by the Social Security Administration. (Doc. No. 15 at 8-9.)

Johnson's statement of the law is unassailable. The opinion of a treating physician, psychologist, or other acceptable medical source is given greater weight than those of physicians hired by the Commissioner. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983). Nonetheless, a treating physician's opinion is entitled to substantial weight only if it is supported by clinical or diagnostic findings. *See Kirk v. Sec'y of Health & Human Servs.*, 667

8

F.2d 524, 538 (6th Cir. 1981). An ALJ may disregard a treating physician's opinion where no medical documentation is presented, where there is no explanation of a nexus between the conclusion of disability and physical findings, or where a treating physician's conclusion is not substantiated by medical data. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 212 (6th Cir. 1986); *Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). In deciding how much weight to ascribe to a treating source's opinion, the ALJ must consider factors such as the "length;" "nature and extent of the treatment relationship;" the physician's specialty; and the "consistency" of the opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Further, an ALJ is not bound by the opinions of a claimant's treating physicians, though he must set forth his reasons for rejecting them. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 320-21 (6th Cir. 1987).

Johnson's argument, however, is without merit as there is no evidence to support her contention that Oriri qualifies as a "treating source" under the regulations. Pursuant to 20 C.F.R. § 404.1502, a "[t]reating source means your own physician, psychologist, or other *acceptable medical source* who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." (emphasis added). Next, 20 C.F.R. § 404.1513 defines an "acceptable medical source" as one of the following: a licensed physician, a licensed or certified psychologist,[4] a licensed optometrist, a licensed podiatrist, or a

---

[4] "Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning." 20 C.F.R. § 404.1513. Here, Oriri was not functioning as a school psychologist, nor was Johnson attempting to establish a disability on the basis of mental retardation, learning disabilities, or borderline intellectual functioning. Thus, this provision is inapplicable.

9

qualified speech pathologist.  In the vast majority of the opinion evidence of record, Oriri's signature is followed only by the acronym "LPCC," which the VE explained was an abbreviation for Licensed Professional Clinical Counselor.  (Tr. 438.)  Only in his final medical source statement dated June 12, 2007 did he add the acronym of Ph.D.(c) after his name.  (Tr. 402.) The Commissioner contends that Oriri is only a Ph.D. candidate and not a licensed psychologist.[5] (Doc. No. 17 at 5, 8.)  The ALJ also voiced some concern over Oriri's credentials and indicated that it was unclear if Oriri was a psychologist.  (Tr. 437-38.)  The ALJ indicated three times during the hearing that he wanted Johnson's attorney to ascertain Oriri's credentials after the hearing.  (Tr. 438, 439, 450-51.)  Johnson does not indicate that she or her attorney ever provided this information to the ALJ.  As the claimant, Johnson bears "the burden of establishing an entitlement to benefits." *Eades v. Soc. Sec. Admin.*, 2000 U.S. App. LEXIS 21258 (6th Cir. 2000) (*citing Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)); *Landsaw*, 803 F.2d at 214 (burden of providing a complete record, detailed enough to enable the Commissioner to make a disability determination, rests with the claimant).

  Thus, the record fails to establish that Oriri constituted an "acceptable medical source" pursuant to the regulations in order to be considered a "treating source."   As such, rather than being an "acceptable medical source," Oriri is merely an "other source" and his opinion is not entitled to deference.  *See* 20 C.F.R. §§ 404.1513(d); 404.1527.  The Sixth Circuit has determined that "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'..." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (*citing*

---

[5] The Commissioner cited Oriri's website for "Able Counseling & Associates Inc." that indicates as of March 17, 2008, Oriri remained a Ph.D. candidate at Northcentral University, an online university.  (Doc. No. 17 at 5; *see* http://www.acaincorp.com and http://www.ncu.edu.)

10

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)). An ALJ must *explain* the weight given to "other sources" or ensure that the discussion of the evidence allows a subsequent reviewer to follow the ALJ's reasoning if the opinion may affect the outcome of the case. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006) explained as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

Failure by an ALJ to specifically *discuss* the assessment of an "other source" and the weight ascribed to the assessment appears to be grounds for remand. *See Cruse,* 502 F.3d 532 (6th Cir. 2007). Here, however, the ALJ fully discussed how much weight he was according to Oriri's opinions and explained why he was according them such weight. (Tr. 22-24.)

Therefore, Johnson's assignment of error is not well taken.

**B.**     **Listing 12.04**

Johnson also argues that substantial evidence proves that she met or equaled the requirements necessary to establish an affective disorder under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04. (Doc. No. 15 at 12-14.) Johnson cites some of the evidence of record and asserts in a conclusory manner that such evidence satisfies the criteria of Listing 12.04. *Id.*

11

To the extent Johnson claims that substantial evidence supports a finding that she met one of the listings, her assignment of error invokes an incorrect standard of review and, therefore, fails to raise an issue reviewable by this Court.  A decision should be affirmed if substantial evidence supports the ALJ's decision.  It is immaterial if substantial evidence also supports a claimant's position.  *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (an ALJ's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence also supports the claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when substantial evidence exists to support both the Commissioner and the claimant);  *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (substantial evidence can exist to support and detract from the ALJ's decision).  Johnson appears to misconstrue the substantial evidence standard, which "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."  *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Because of the nature of the substantial evidence standard, Johnson cannot establish that the ALJ's opinion was unsupported by merely pointing to evidence of record that could support the opposite conclusion.  Instead, to raise a cognizable claim, Johnson must demonstrate that there is insufficient evidence in the record that would allow a reasoning mind to accept as sufficient the ALJ's conclusion.  In his opinion, the ALJ discussed the conservative treatment received by Johnson and the complete absence of any attempts at controlling her condition with

12

medication, the opinions of reviewing psychologists supporting his findings, and the inconsistencies in the medical source statements completed by Oriri. (Tr. 17-25.) Such evidence is sufficient to support the ALJ's determination. The ALJ did not err by finding that Johnson failed to meet or equal Listing 12.04.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White<br>
U.S. Magistrate Judge

Date: November 19, 2008